IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>MATTHEW SKIBICKI,<br><br>                       Debtor(s). | CASE NO. BK 20-40033-TLS<br><br>CHAPTER 7<br><br>ADV. NO. A20-4011-TLS |
| DANIEL J. CASAMATTA, Acting United States Trustee,<br><br>                 Plaintiff(s)<br>     vs.<br><br>MATTHEW SKIBICKI,<br><br>                Defendants(s). | **ORDER** |

This matter is before the court on motions for summary judgment by the Acting United States Trustee (Fil. No. 11) and the debtor (Fil. No. 17). Jerry L. Jensen represents the Acting United States Trustee, and Susan M. Napolitano represents the debtor. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

As more fully explained below, both motions are denied.

The Acting United States Trustee filed this adversary complaint seeking to deny the defendant a discharge under 11 U.S.C. § 727(a) for failing to disclose assets, concealing or transferring assets with the intent to hinder or defraud creditors, knowingly and fraudulently making a false oath or account, and failing to satisfactorily explain a loss or deficiency of assets.

Both parties have now moved for summary judgment on the merits, asserting that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1]

> Summary judgment is appropriate where a party shows "there is no genuine dispute as to any material fact" and the party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factfinder's decision is reasonable if it is based on "sufficient probative evidence" and not on "mere speculation, conjecture,

---

[1] The plaintiff's motion seeks judgment as a matter of law that the defendant is denied a discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4). The plaintiff appears to have abandoned his request for relief under § 727(a)(5).

or fantasy." *See Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (quoting
*Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)).

*Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019).

The first step in analyzing a summary judgment motion is to determine what the facts are.
In this case, the following facts have been established:

1. The defendant is the debtor in a case filed under Chapter 7 of Title 11 of the United
   States Code at Case No. BK20-40033, currently pending in the U.S. Bankruptcy
   Court for the District of Nebraska. The bankruptcy case was filed on January 7,
   2020.

2. The defendant is a resident of Lincoln, Nebraska.

3. When the defendant filed his petition for bankruptcy relief, he also filed his
   bankruptcy schedules and Statement of Financial Affairs. The defendant's
   Schedule A/B lists total assets of $280,746.00, consisting only of personal property
   and no real property.

4. In conjunction with filing his petition and schedules, the defendant also signed and
   executed a Declaration About an Individual Debtor's Schedules in which he
   declared under penalty of perjury that he had read the schedules and that they were
   true and correct.

5. Brian S. Kruse was appointed as the Chapter 7 trustee on January 7, 2020. On
   March 13, 2020, Mr. Kruse filed his Resignation as Trustee in this case, and on the
   same date, the United States Trustee appointed John Stalnaker as the Successor
   Trustee in this case.

6. The defendant filed amended bankruptcy schedules on February 11, 2020.

7. The defendant testified under oath at his § 341 first meeting of creditors, conducted
   by Mr. Stalnaker on February 27, 2020.

8. The defendant's Schedule A/B, question 16 (Cash), reports that he had no cash on
   hand.

9. The defendant's Schedule A/B, question 17 (Deposits of money), reports that he
   had two accounts with a total value of $4,000.00. The original schedules did not
   indicate the name of the financial institution holding these accounts.

10. The defendant's Schedule A/B, question 19 (Non-publicly traded stock and
    interests in incorporated and unincorporated businesses, including an interest in an
    LLC, partnership, and joint venture), reports that he had no interest in such
    businesses. Specifically, the defendant does not claim any interest in Thirsty Mules,
    LLC d/b/a The Copper Kettle Mule Bar & Eatery ("The Copper Kettle").

11. The defendant's Statement of Financial Affairs, question 27 (Within 4 years before filing for bankruptcy, did you own or have a connection to a business), reports that he was a partner in The Copper Kettle.

12. The defendant states in his affidavit that The Copper Kettle operated until March 16, 2020, when the City of Lincoln required bars and restaurants to close because of the COVID-19 pandemic. The defendant then transferred his 19.99 percent ownership interest in the business on May 1, 2020, to another individual, who agreed to assume the business's outstanding obligations.

13. The defendant's Schedule A/B, question 21 (Retirement or pension accounts), reports an Edward Jones IRA with a value of $19,000.

14. The defendant's Schedule A/B, question 24 (Interests in an education IRA, in an account in qualified ABLE program, or under a qualified state tuition program), reports a "529 Plan" with a value of $9,000.

15. The defendant claimed an exemption for this alleged 529 plan as an education fund.

16. At the § 341 meeting, the defendant testified that the "529 Plan" was actually an account with Edward Jones into which the debtor made monthly deposits for his young son's college loan. The child's birthday money and other cash gifts are also deposited into that account. The defendant explained that he intentionally avoided setting it up as a 529 account so his son "didn't have to use the funds all for education when he grows up."

17. The defendant's Schedule A/B, question 35 (Any financial assets you did not already list), reports "Skibicki Investments through Ameritrade" with a value of $220,000.00.

18. The actual value of the TD Ameritrade account on December 31, 2019, just seven days before the petition date, was $345,715.88.

19. On January 9, 2020, Wells Fargo directed a notice to Trustee Kruse, informing him that the defendant owned the following bank accounts at Wells Fargo Bank: Savings account #8641 containing $180.24; Savings account #8296 containing $16,713.77; and Checking account containing $18,661.29. After receiving the notice from Wells Fargo, Trustee Kruse received the proceeds of the three accounts on January 22, 2020, which totaled $35,555.30.

20. The defendant amended his bankruptcy schedules on February 11, 2020, to list the aforementioned three Wells Fargo accounts. The amended schedules also:

    a. increased the value of the TD Ameritrade account to $290,256.76;
    b. increased the value of the Edward Jones Roth IRA account to $20,699.14;
    c. added a Liberty First Credit Union checking account of $2,235.70;

    d.   added a Liberty First Credit Union Savings account of $2,506.02;

    e.   added an Edward Jones Brokerage account #8515 of $10,753.47; and

    f.   added a Union Bank "Savings account for child" of $1,487.90.

21. Bank statements obtained by the Chapter 7 trustee reflect that the defendant used the following accounts to transfer funds:

    a.   Venmo account, from which the defendant transferred more than $20,000 to his Wells Fargo checking account during 2019;

    b.   Zelle account, from which the defendant transferred $1,450 to his Wells Fargo account in October 2019;

    c.   Square, Inc., account in which the defendant transferred $2,305 to his Wells Fargo account in 2019.

22. Bank statements obtained by the Chapter 7 trustee reflect that the defendant made the following transfers into and out of his accounts prior to the filing of the bankruptcy petition:

    a.   The defendant transferred $20,000 to an unknown third party on March 20, 2019, from Wells Fargo checking account #55523. The transfer is listed as "Purchase Bank Check or Draft."

    b.   On December 31, 2019, the defendant transferred $18,790 to an unknown party in Hong Kong by wire transfer from his Wells Fargo savings account #8296.

    c.   The defendant deposited $25,000 and withdrew the same by check on March 20, 2019, from his Liberty First Savings account.

    d.   The defendant deposited $10,180 and wire-transferred the same amount to an unknown party on December 12, 2019, from his Liberty First savings account.

23. The Statement of Financial Affairs, at question 18, requires an individual debtor to disclose whether he transferred any property to anyone, other than in the ordinary course of his business or financial affairs, within 2 years before filing for bankruptcy. The defendant stated that he had made no transfers of property to anyone within 2 years before filing for bankruptcy.

24. The defendant claimed that his transfers were for purposes of investments or loans, which he believed to be in the ordinary course of his business, which is that of a day trader and entrepreneur.

25. The defendant testified at his § 341 meeting that the $20,000 and the $25,000 transfers on March 20, 2019, were for investment purposes.

26. The defendant subsequently stated in his affidavit (Fil. No. 13, ¶ 7) that the $20,000 transfer was to the mother of his daughter, in payment "for back due bills such as medical bills for our daughter's delivery into this world, her health insurance, clothing, food, daycare, rent, utilities, cell phone, truck payments and credit card payments that she carried me on for quite some time."[2]

27. According to the defendant, the source of the funds for the $20,000 transfer was his cash savings.

28. The December 12, 2019, wire transfer of $10,180 and the December 31, 2019, wire transfer of $18,790 were made to an online acquaintance, ostensibly to aid the acquaintance in leaving China at the onset of the COVID-19 pandemic.

29. The defendant refused to disclose the identity of this online acquaintance at the § 341 meeting because the defendant said he did not want to involve this person in the bankruptcy case. The defendant later provided the relevant information about the individual and the transfer at the request of Trustee Stalnaker.

30. The defendant's contact with the person he knew as Huang Chen, to whom he wired the funds in December 2019, took place only through online communications platforms, including an encrypted messaging application that renders content inaccessible after a period of time, so there is no record of the parties' conversations. The defendant has not been able to contact Huang Chen since June 2020.

31. The defendant testified at the § 341 meeting that he had listed all of his assets on his schedules and that the bankruptcy schedules and statements were true and correct.

32. Trustee Stalnaker subsequently became aware of Venmo[3], Square, and Zelle accounts used by the defendant to transfer money to his Wells Fargo Bank accounts in 2019, but those accounts were not listed in the original or amended schedules or Statement of Financial Affairs.

33. The defendant did not list any income in his bankruptcy schedules, and he stated in his affidavit that he had no income in 2019.

---

[2] It did not escape the court's attention that the recipient of these funds appears to be the same individual who notarized the debtor's affidavit.

[3] The defendant states in his affidavit (Fil. No. 13, ¶2) that he has not had a Venmo mobile payments account since early 2018, but named one of his Wells Fargo Bank checking accounts "Venmo."

34. At the § 341 meeting, the defendant explained that the source of several large deposits totaling $80,000, as well as the $20,000 transfer to his daughter's mother and the $30,000 transferred to his friend in China, was cash that he kept at home. The defendant further testified that he ran some of this money through the account of a friend so it would not look suspicious.

The plaintiff asserts that the defendant's lack of honesty and failure to fully disclose his assets should deprive him of a discharge. Denial of discharge is "a serious matter not to be taken lightly by a court." *McDonough v. Erdman (In re Erdman)*, 96 B.R. 978, 984 (Bankr. D.N.D. 1988). It "is akin to financial capital punishment" and "is reserved for the most egregious misconduct by a debtor." *United States Trustee v. Beard (In re Beard)*, 595 B.R. 274, 289 (Bankr. E.D. Ark. 2018) (quoting *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 630 (Bankr. N.D. Ind. 2012)). Such misconduct is dealt with harshly because a discharge in bankruptcy and the associated fresh start, are privileges, not rights. *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

The provisions of § 727 are strictly construed in the debtor's favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). When a party objecting to a debtor's discharge "establishes a prima facie case, the burden then shifts to the debtor defendant to offer credible evidence to satisfactorily explain his conduct." *Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 685 (Bankr. D.S.C. 2016); *Kaler v. Charles (In re Charles)*, 272 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012); Fed. R. Bankr. P. 4005.

The plaintiff summarizes the basis for this adversary proceeding in describing the defendant's omission from his bankruptcy schedules and Statement of Financial Affairs of 10 financial accounts containing more than $50,000, an ownership interest in a business, and four transfers of funds in the year prior to filing that totaled more than $70,000, in addition to erroneous balances listed for accounts included in the schedules. When the defendant amended his Schedule A/B, he added more than $110,000 in previously undisclosed accounts and revised account balances.

The plaintiff relies on several subsections of § 727 in support of his argument that the defendant is not entitled to a discharge: § 727(a)(2) – concealing property with intent to hinder, delay, or defraud a creditor or the Chapter 7 trustee; § 727(a)(4)(A) – knowingly and fraudulently making false oaths or accounts of property or transfers of property; and § 727(a)(4)(D) – knowingly and fraudulently withholding from an officer of the estate information relating to the debtor's property or financial affairs. Each will be addressed in turn.

## § 727(a)(2)

Section 727(a)(2) of the Bankruptcy Code states, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless —
    . . .
    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred,

removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —

        (A) property of the debtor, within one year before the date of the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition[.]

This section is "fundamental to the concept that a debtor's chapter 7 discharge is granted upon the condition that the debtor has disclosed all of [his] assets and made them available for distribution." *Beard*, 595 B.R. at 290.

To prevail on the complaint, the plaintiff must show by a preponderance of the evidence that (1) the debtor's actions took place within twelve months prior to the filing of the petition for bankruptcy relief, or after the petition date; (2) the debtor took the actions with the intent to hinder, delay or defraud a creditor or an officer of the estate; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring, removing, destroying or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *Korte v. United States (In re Korte)*, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Constructive intent will not suffice. *Jacoway v. Mathis (In re Mathis)*, 258 B.R. 726, 733 (Bankr. W.D. Ark. 2000) (citing *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)). Because direct evidence of a debtor's intent may be difficult to come by, such intent may be inferred from facts and circumstances of the debtor's conduct. *Korte*, 262 B.R. at 472-73. The overriding principle applicable in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *U.S. Trustee v. Govani (In re Govani)*, 509 B.R. 675, 683 (Bankr. N.D. Iowa 2014) (quoting *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)). For that reason, intent is difficult to ascertain at the summary judgment stage.

Here, the plaintiff relies on the concealment and transfer portions of the statute. He first argues that the defendant concealed his ownership of several financial accounts and a business. "Concealment has generally been defined as the transfer of legal title to property to a third party with the retention of a secret interest by the Bankrupt." *Sears v. Sears*, 863 F.3d 980, 984 (8th Cir. 2017) (quoting *In re Olivier*, 819 F.2d 550, 553 n.4 (5th Cir. 1987)). Asset concealment often exists "where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued." *McDermott v. Petersen (In re Petersen)*, 564 B.R. 636, 645 (Bankr. D. Minn. 2017) (quoting *Korte*, 262 B.R. at 472).

The record does not reflect a concealment of assets so much as a failure to disclose certain assets, although intent is certainly relevant when trying to ascertain whether the assets were purposely or inadvertently left off the bankruptcy schedules. The omissions from the debtor's initial schedules are glaring, particularly when compared to the accounts disclosed by Wells Fargo and the bank and brokerage accounts subsequently disclosed in the amended schedules. The defendant's sudden discovery of more than $110,000 in assets that were omitted from his initial schedules is troubling. These omissions will also be addressed in the § 727(a)(4)(A) section of this order.

The evidence concerning the failure to disclose the mobile cash payment and transfer accounts (e.g., Venmo, Square, Zelle) is unclear. The defendant suggests he used them merely as portals for transferring funds, rather than for holding assets. The records show that he transferred more than $20,000 through these accounts into his Wells Fargo account in 2019, a year in which he claims he had no income, although there obviously can be other sources for the funds. It is difficult to ascertain whether these were actual cash accounts or simply means for transferring money that is otherwise accounted for.

As to the plaintiff's allegation regarding the defendant's failure to disclose his Copper Kettle ownership interest, the plaintiff is correct that it was not listed as an asset on Schedule B. However, the defendant did include it in his answer to question 27 in the Statement of Financial Affairs, which mitigates against a finding of intentional concealment. However, § 727(a)(2) also addresses the transfer of property, and the defendant admits to transferring his interest in The Copper Kettle during the pendency of the bankruptcy case without notice to the Chapter 7 trustee or authorization from the court.

The defendant also made several transfers of cash within the year before filing the bankruptcy petition, which were not reported in the schedules. These transfers include the $20,000 payment to his daughter's mother in March 2019, the $25,000 deposit of cash which was transferred to the defendant's TD Ameritrade account in March 2019, and the nearly $30,000 wired to Hong Kong in December 2019. These were gratuitous transfers which give rise to a presumption of fraud. *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) ("There is a presumption of fraud in § 727(a)(2) cases when a debtor transfers valuable property without payment."). The burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors. *Id.* Other than a vague suggestion that he felt compelled to do the right thing by paying his daughter's mother a lump sum to cover various family and personal expenses for which he was responsible, and by helping out an acquaintance whom he believed needed financial assistance to escape China as the pandemic began, the defendant offers no plausible evidence to show that these transfers were legitimate.

The court is highly skeptical of the defendant's explanation for many of the transfers and deposits that allegedly came from tens of thousands of dollars of "mattress money" that the defendant kept at his house. In addition to the transfers mentioned above, he also testified that he deposited $80,000 one day in August 2019 which came from cash kept at his house, but he ran it through a friend's bank account to avoid suspicion. Even if these were funds the defendant had "saved up his whole life," his decision to use them in the manner in which he did, while allegedly having no income for two years, raises certain red flags about the defendant's intent, particularly when he deliberately omitted them from his Statement of Financial Affairs.

The plaintiff has met the burden of showing each element of § 727(a)(2)(A) and (B) by demonstrating that the defendant transferred property within one year prior to the date the petition was filed, and after it was filed, under circumstances that lead to a presumption of intent to deceive or reckless disregard for the truth. The defendant will be given the opportunity to rebut this presumption at a trial on the merits.

**§ 727(a)(4)(A)**

Section 727(a)(4)(A) of the Bankruptcy Code authorizes the court to withhold a discharge of all of a debtor's debts when the debtor knowingly and fraudulently makes a false oath or account in the bankruptcy case. The purpose of § 727(a)(4)(A) is to "promote[] truth-telling in the statements and schedules so that creditors and trustees will not have to resort to independent investigation and fact-finding." *Wetzel v. Eichler (In re Eichler)*, 599 B.R. 31, 46 (Bankr. E.D. Ark. 2019) (quoting *Daniel v. Boyd (In re Boyd)*, 347 B.R. 349, 355 (Bankr. W.D. Ark. 2006)). "Full disclosure is required, not only to ensure that creditors receive everything they are entitled to receive under the Bankruptcy Code, but also to give the bankruptcy system credibility and make it function properly and smoothly[.]" *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015).

The bankruptcy court in this district has previously explained the responsibilities of debtors who seek the protection of the bankruptcy system:

> [A]ll debtors are under a duty to provide complete and accurate information to the trustee. "Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt." *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969) (quoted in *Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 289, 2005 WL 176232, at *4 (8th Cir. 2005) (Smith, J., dissenting)).

> The Bankruptcy Code is designed to ensure that deserving debtors receive a "fresh start" by requiring them to provide complete, accurate, and reliable information at the commencement of the case, so that all parties may adequately evaluate the case and the estate's property may be appropriately administered. "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

*Bren*, 303 B.R. at 614, *aff'd in part*, 122 Fed. Appx. 285, 2005 WL 176232 (8th Cir. Jan. 27, 2005).

> Debtors must make full and complete disclosures on their bankruptcy schedules, and it is not up to a debtor to decide upon the relevance or value of assets or information before including it on his or her schedules. This requirement enables the trustee and creditors to rely on the information supplied by the debtors.

*Rutland v. Petersen (In re Petersen)*, 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005) (internal citations omitted).

Likewise,

The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

*Morrel, West & Saffa, Inc. v. Riley (In re Riley)*, 128 B.R. 567, 569 (Bankr. N.D. Okla. 1991).

Clearly, the debtor is ultimately responsible for the veracity of the information contained in her bankruptcy schedules. *Bren*, 303 B.R. 610; *Kaler v. McLaren (In re McLaren)*, 236 B.R. 882 (Bankr. D.N.D. 1999).

*In re McKain*, 325 B.R. 842, 848-49 (Bankr. D. Neb. 2005).

To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must prove that
(1) "the Debtor made a statement under oath;
(2) the statement was false;
(3) the Debtor knew the statement was false;
(4) the Debtor made the statement with fraudulent intent; and
(5) the statement related materially to the Debtor's bankruptcy case."

*Kaler v. Charles (In re Charles)*, 272 B.R. 680, 684 (B.A.P. 8th Cir. 2012) (citing *Lincoln Sav. Bank v. Freese (In re Freese)*, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011)).

Well-established case law holds that because the statements made by a debtor in his schedules and statements and at the meeting of creditors are signed under penalty of perjury and made under oath, they constitute "oaths" for purposes of § 727(a)(4)(A). *Id.* (citing *Korte*, 262 B.R. at 474); Fed. R. Bankr. P. 1008.

A matter is "material" if it concerns the discovery of assets or the existence and disposition of estate property, or bears a relationship to the debtor's business transactions or estate. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992); *Ellsworth v. Bauder (In re Bauder)*, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam). The value of omitted assets is relevant to materiality, but materiality will not turn on value; an omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent. *Mertz*, 955 F.2d at 598; *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.3d 481, 484 (8th Cir. 1990). "Since the bankruptcy system depends on full disclosure, a discharge is properly denied where a debtor acts with reckless indifference in failing to list assets in which that debtor holds an interest. Here, whether these assets would have ultimately resulted in funds for creditors or not, the items the Debtor omitted from [his] schedules were not of trivial value." *Cecil*, 542 B.R. at 454–55.

Questions of whether certain assets titled in a debtor's name are, or are not, property of the estate are not questions a debtor should decide. "Rather, those questions are plainly and fundamentally issues to be determined by a trustee or the court." *Cecil*, 542 B.R. at 454.

Intent can be established by circumstantial evidence, *Korte*, 262 B.R. at 474, and reckless disregard for the truth will support a finding of fraudulent intent for the purpose of denying a debtor his discharge under § 727(a)(4)(A). *Bank of Bennington v. Thomas (In re Thomas)*, 431 B.R. 468, 472 (B.A.P. 8th Cir. 2010) (citing *Korte* at 474). "Reckless disregard for the truth" means not caring whether some representation is true or false. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

The defendant admittedly left more than $110,000 in assets off his initial bankruptcy schedules and failed to include at least $75,000 of transfers in his Statement of Financial Affairs.[4] These assets and transfers did not come to light until a bank reported several accounts that had not been listed and the trustee conducted his own investigation. The defendant does not dispute the existence of the errors on his initial schedules, nor does he dispute the material nature of those errors. In other words, he does not deny that he made false oaths in his schedules and Statement of Financial Affairs. Further, the omissions and misstatements were directly related to the defendant's business dealings, his assets, and the existence and disposition of his property. Thus, they were material. His defense is that they were unintentional mistakes. Contrary to the defendant's argument, these were manifold and significant omissions that rendered the schedules and Statement of Financial Affairs incomplete and unreliable. Some – but not all -- were corrected, but only after a disclosure by the bank and an investigation by the trustee. Whether these omissions were unintentional, purposeful, or the result of reckless indifference is a matter to be explored at a trial on the merits.

**§ 727(a)(4)(D)**

Section § 727(a)(4)(D) authorizes the court to withhold a discharge of all of a debtor's debts when the debtor knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. A debtor "knowingly and fraudulently withholds records when the failure to produce requested records is an attempt to hide assets or impede the trustee." *Strauss v. Brown (In re Brown)*, 531 B.R. 236, 265 (Bankr. W.D. Mo. 2015) (quoting *In re Mullin*, 455 B.R. 256, 261 (Bankr. M.D. Fla. 2011)); *see also Gargula v. Lombard (In re Lombard)*, 446 B.R. 344, 349 (Bankr. W.D. Mo. 2010) (analyzing the phrase as it is used in § 727(d)(2) and stating that "'knowingly and fraudulently' . . . requires that the debtor's actions must have been taken with the intent to defraud the trustee, or be so reckless as to justify a finding that the debtor acted fraudulently").

The plaintiff seeks a denial of discharge under this section because the defendant allegedly refused to identify the transferee of the funds wired to Hong Kong in December 2019. It is true the

---

[4] "Filing corrected schedules only after [the debtor's] fraud was discovered does not cure the initial falsity of the schedules and testimony." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993).

defendant (1) did not disclose any information about this transfer on his Statement of Financial Affairs, leaving the Chapter 7 trustee to discover it on his own when he reviewed the relevant bank records, and (2) refused to divulge the transferee's identity when questioned at the § 341 meeting in February 2020. The defendant explained the circumstances of the transfers and identified the transferee in his August 2020 affidavit (Fil. No. 13), which was prepared not long after Trustee Stalnaker followed up on the request he initially made at the § 341 meeting for the information. The details of the situation giving rise to the transfers and the delay in providing the information are suspicious, but the plaintiff will have the opportunity at trial to establish whether the defendant knowingly and fraudulently withheld the information.

**Defendant's motion for summary judgment**

The defendant's motion for summary judgment is in all respects an objection to the plaintiff's motion and its arguments in opposition to the plaintiff's motion have been addressed above, including the disclosure of The Copper Kettle ownership interest in the Statement of Financial Affairs but not in the schedules, the unclear nature of the mobile payment accounts, concealment vs. failure to disclose, the defendant's amended schedules, and the timeliness of his explanation of the wire transfers to Hong Kong. The defendant insists that none of the errors were made with fraudulent intent, so he should not be denied a discharge. However, as explained above, the plaintiff's evidence establishes most of the elements favoring denial of discharge and gives rise to the presumption that the defendant acted with an intent to deceive or a reckless disregard for the truth. Because the court must find intent before denying a debtor a discharge, the debtor will have the opportunity at trial to rebut the presumption.

IT IS ORDERED: The motion for summary judgment by the Acting United States Trustee (Fil. No. 11) is denied. The motion for summary judgment by the defendant (Fil. No. 17) is denied. The clerk shall schedule this case for trial.

Date: April 12, 2021.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the court to:
    *Jerry L. Jensen
    *Susan M. Napolitano

*Movant is responsible for giving notice to other parties if required by rule or statute.